[No. A083168. First Dist., Div. One. Aug. 10, 1999.]

KATHLEEN M. GIBBS, Plaintiff and Appellant, v.
AMERICAN AIRLINES, INC., Defendant and Respondent.

2

## COUNSEL

Patricia A. Shiu, Robin R. Runge and Joannie C. Chang for Plaintiff and Appellant.

Garry G. Mathiason, Paula Champagne and Kenneth B. Stratton for Defendant and Respondent.

## OPINION

**STRANKMAN, P. J.**—An airline worker claimed her employer unlawfully denied her statutory medical leave, despite having notice of her serious health condition, and intentionally inflicted emotional distress. (Gov. Code, § 12945.2, subds. (a), (c)(3)(C).) The jury returned a split verdict, finding in favor of the employer on the medical leave claim but in favor of the worker on the emotional distress claim. The jury found that the worker had not given her employer notice of her need for medical leave. The employer and worker separately moved for judgment notwithstanding the verdict (JNOV) or to vacate the judgment. (Code Civ. Proc., § 629.) The trial court denied the worker's motion but granted the employer's motion upon concluding that workers' compensation was the exclusive remedy for work-related emotional distress. (Lab. Code, § 3601, subd. (a).) We affirm the trial court's rulings and the judgment.

### I.   FACTS[1]

Appellant Gibbs worked at respondent American Airlines, Inc. (American Airlines) from 1989 to 1995. Gibbs was a service representative in the Admiral's Club at the San Francisco airport in her last few years at American Airlines. Gibbs assisted club members with travel arrangements and use of the club's business facilities. Gibbs resigned from American Airlines after her supervisors criticized her performance and attendance following four days' absence on sick leave in April 1995.

On Saturday, April 8, 1995, Gibbs left a note for a coworker: "I'm calling in sick for Sun and poss[ibly] Monday. I've had fever all night, blis[ters] on my nose & mouth and chills." On April 9 or 10, Gibbs telephoned American Airlines and spoke to a coworker who wrote a note to the supervisor saying:

---

[1]The facts surrounding appellant Gibbs's claimed right to medical leave are stated in the light most favorable to American Airlines, Inc., the prevailing party. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

"Kathy Gibbs called, she has a virus that has given her fever blisters. Her doctor has her on anti-biotics." Gibbs's supervisor called Gibbs at home on Monday, April 10, and Gibbs said she "wasn't feeling well" and her doctor told her not to go to work. Gibbs's regularly scheduled days off were Tuesday and Wednesday, April 11 and 12. Gibbs's absence continued through April 13 and 14, with Gibbs returning to work on Saturday, April 15. Gibbs testified that she telephoned American Airlines during her days off and told someone that she would be out through April 14. Gibbs's illness was diagnosed as a flu or cold. Gibbs testified that her doctor "told me to go in and take some Tylenol and he told me to go to bed and drink a lot of fluids and he said, basically, it's like a flu symptom, just go to bed. Just rest."

On April 17, 1995, several days after returning to work, Gibbs attended a previously scheduled meeting with her supervisor, Carol Hickey, and General Manager Tryg McCoy. The meeting was arranged to discuss grievances between Gibbs and Supervisor Hickey, and also Gibbs's performance and attendance. The meeting lasted two hours. On the subject of Gibbs's attendance, General Manager McCoy testified that he asked Gibbs if her absences were "behind her" and asked whether there was "anything to prevent her from coming into work on her schedule in the future." Gibbs said she would be able to work as scheduled. Gibbs did not produce a doctor's note, say she needed further medical care, describe any symptoms of illness, nor appear ill to McCoy. Gibbs never requested medical leave and, in fact, offered to increase her work status to full-time to solve scheduling problems.

American Airlines believed Gibbs's attendance record indicated "a possible abuse of the Sick Leave Benefit." American Airlines regards certain patterns of absenteeism as suspect, such as sick leave taken in conjunction with days off or vacation periods. Where sick leave abuse is suspected, American Airlines places the employee on a 90-day doctor's note requirement. The employee must bring a doctor's note validating any future illness during a 90-day period to receive sick leave payment. Gibbs's supervisors placed her on a 90-day doctor's note requirement at the April 17, 1995, meeting. Gibbs had been placed on the same requirement in 1990 and 1991 by different supervisors.

Gibbs resigned on April 20, 1995, three days after her meeting with Supervisor Hickey and General Manager McCoy. Gibbs wrote to Supervisor Hickey that she was resigning "due to many situations I have faced . . . since January 3, 1995 [when Hickey returned from maternity leave] and most recently, the discussion with Mr. Tryg McCoy on Monday, April 17, 1995. [¶] It was then that I realized that being employed under your

supervision was a 'no win' situation for me or for my career with American Airlines."

Gibbs was diagnosed with fibromyalgia in July 1995, almost three months after leaving American Airlines. Gibbs's expert witness, Dr. Donald Lee, testified that fibromyalgia is a syndrome consisting of "a myriad of complaints" such as chronic diffused pain, discrete tender points, fatigue, sleep disturbance and mental depression. Dr. Lee opined that Gibbs had fibromyalgia since 1987, based on her medical records containing complaints of pain. However, Dr. Lee could make no link between Gibbs's cold or flu symptoms in April 1995 and her later-diagnosed fibromyalgia. Dr. Lee conceded that "there's no connection between a cold and fibromyalgia."

## II. DISCUSSION

A. *The jury's finding that American Airlines did not violate the California Family Rights Act is supported by the evidence.*

1. *Statutory overview.*

California's Family Rights Act (CFRA) and the federal Family and Medical Leave Act (FMLA) provide similar protections to employees needing family leave or medical leave. (Gov. Code, § 12945.2 subd. (a); 29 U.S.C. § 2612(a).) Gibbs sued under CFRA. CFRA generally provides that it is unlawful for an employer to refuse an employee's request for up to 12 weeks of "family care and medical leave" in a year. (Gov. Code, § 12945.2, subd. (a).) An employer is also forbidden from discharging or discriminating against an employee who requests family leave or medical leave. (Gov. Code, § 12945.2, subd. (*l*).) "Family care and medical leave" includes "[l]eave because of an employee's own serious health condition that makes the employee unable to perform the functions of the position of that employee . . . ." (Gov. Code, § 12945.2, subd. (c)(3)(C).) "Serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves either of the following: [¶] (A) Inpatient care in a hospital, hospice, or residential health care facility. [¶] (B) Continuing treatment or continuing supervision by a health care provider." (Gov. Code, § 12945.2, subd. (c)(8).)

An employee "shall provide the employer with reasonable advance notice of the need for the leave." (Gov. Code, § 12945.2, subd. (h).) "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights

under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, the employee must state the reason the leave is needed, such as, for example, the expected birth of a child or for medical treatment. The employer should inquire further of the employee if it is necessary to have more information about whether CFRA leave is being sought by the employee and obtain the necessary details of the leave to be taken." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1).)

*2. Substantial evidence supports the jury's finding that Gibbs did not provide notice sufficient to make American Airlines aware that she needed CFRA-qualifying leave.*

The jury returned a special verdict in favor of defendant American Airlines on Gibbs's claim for violation of CFRA, finding that Gibbs did not "give American Airlines notice of the need for a leave under the California Family Rights Act." Gibbs concedes that the jury was properly instructed on CFRA's notice provisions, but argues that she was entitled to JNOV because the jury's finding was "erroneous."

" ' "The scope of appellate review of a trial court's denial of a motion for judgment notwithstanding the verdict is to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's conclusion and where so found, to uphold the trial court's denial of the motion." ' " (*Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 730 [60 Cal.Rptr.2d 698].) "Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, . . ." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386].)

There is substantial evidence supporting the jury's conclusion that Gibbs did not provide notice sufficient to make American Airlines aware that she needed CFRA-qualifying leave. (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1).) An employee's "serious health condition that makes the employee unable to perform the functions of the position of that employee" is CFRA-qualifying leave. (Gov. Code, § 12945.2, subd. (c)(3)(C).) Gibbs never asked for medical leave and she explained her absence in terms suggesting only a cold or flu. Gibbs told American Airlines that she had "fever all night, blis[ters] on my nose & mouth and chills" and a "virus that has given her fever blisters." Gibbs also told American Airlines that she was on antibiotics and "wasn't feeling well." Gibbs's illness was, in fact, diagnosed as a flu or cold and there is no evidence linking her undetected fibromyalgia with the flu symptoms that prompted her absence from work.

A cold or flu is not an incapacitating serious health condition under CFRA absent *unusual circumstances.* California regulations describe a "serious health condition" as an illness involving either inpatient care or "continuing treatment or continuing supervision by a health care provider as detailed in FMLA and its implementing regulations." (Cal. Code Regs., tit. 2, § 7297.0, subd. (o).) FMLA regulations specifically name "the common cold" and "the flu" as "examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." (29 C.F.R. § 825.114(c) (1998).)

Nevertheless, Gibbs argues that her cold or flu symptoms alerted American Airlines that she had a serious health condition because she received continuing treatment (antibiotics) by a health care provider. Gibbs's argument is founded on a myopic reading of a FMLA regulation defining a "serious health condition." (29 C.F.R. § 825.114(a) (1998).) "A serious health condition involving continuing treatment by a health care provider includes any one or more of the following: [¶] (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: [¶] (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or [¶] (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." (29 C.F.R. § 825.114(a)(2).)

Gibbs argues that her flu symptoms satisfied the standards of a serious health condition, and American Airlines had notice of the seriousness of her condition because she was out of work for more than three consecutive calendar days (April 9-14) and (1) had two or more doctor appointments; and (2) was treated by a doctor who prescribed antibiotics as "a regimen of continuing treatment." (29 C.F.R. §§ 825.114(a)(2)(i)(A), 825.114(a)(2)(i)(B) (1998).) Gibbs's argument is defeated by a reading of the regulation as a whole. The regulation defines "serious health condition" to include an incapacity to work for several days coupled with continuing medical treatment. Absence from work does not establish "incapacity." (*Brannon* v. *Oshkosh B'Gosh, Inc.* (M.D.Tenn. 1995) 897 F.Supp. 1028, 1037.) The regulation anticipates that a variety of health matters may involve absence from work and continuing medical treatment but *still not* properly be accorded FMLA (or CFRA) leave. Thus, the regulation

expressly excludes common ailments including a cold, flu, ear ache, upset stomach, and ordinary headaches. (29 C.F.R. § 825.114(c).)

A jury may reasonably find that an employee who calls in sick to work for several days while taking antibiotics for an apparent flu has not provided her employer with "notice sufficient to make the employer aware that the employee needs CFRA-qualifying leave." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1).) The jury here found that Gibbs had a serious health condition under CFRA, but that she failed to give American Airlines notice of her need for leave under CFRA. Gibbs claims that the jury accepted her absence and antibiotic treatment for flu symptoms as a CFRA-qualifying serious health condition, and thus logically had to find that American Airline's knowledge of her absence and treatment was sufficient notice of her need for CFRA-qualifying leave. In fact, the record strongly suggests that the jury accepted appellant's undiagnosed fibromyalgia as the serious health condition but found that American Airlines had notice of only flu symptoms. Notice of flu symptoms is not notice of a need for CFRA-qualifying leave. An employer is not required to be a better diagnostician than are physicians, just as an " 'employer is not required to be clairvoyant.' " (*Satterfield* v. *Wal-Mart Stores, Inc.* (5th Cir. 1998) 135 F.3d 973, 980 [employee's statements that she was" 'sick' " and " 'was having a lot of pain in her side' " inadequate notice under FMLA].)

B. *Workers' compensation is Gibbs's exclusive remedy for emotional distress.*

The jury found American Airlines responsible for intentional infliction of emotional distress and awarded Gibbs compensatory damages of $117,800, and punitive damages of $1. The trial court properly found that Gibbs's emotional distress cause of action was preempted by workers' compensation law and entered JNOV in favor of American Airlines on the claim.

There are several essential conditions to an employer's liability to an employee under the workers' compensation law. (Lab. Code, § 3600.)[2] Where those "conditions of compensation" concur, the right to recover such

---

[2]Labor Code section 3600 provides, in relevant part: "(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the

compensation is generally the employee's exclusive remedy against his or her employer. (Lab. Code, § 3601, subd. (a).) The exclusivity of workers' compensation extends to intentional infliction of emotional distress by an employer's work-related conduct so long as the conduct does not contravene public policy. (*Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 754 [7 Cal.Rptr.2d 808, 828 P.2d 1195].)

### 1. Trial court proceedings and appellate claims.

American Airlines argued for workers' compensation exclusivity on demurrer to Gibbs's complaint, in its answer to the complaint, on motion for summary judgment, in motions *in limine*, in its trial brief, and in a motion for JNOV where it finally prevailed. Gibbs defeated workers' compensation exclusivity until after trial by "piggybacking" her emotional distress claim upon the alleged CFRA statutory violation, which was characterized as a contravention of public policy.

Gibbs understood that her emotional distress claim was preempted by workers' compensation if the jury did not find a CFRA violation, as trial discussions between court and counsel reveal. "THE COURT: . . . The reason I want a special verdict form is this: If in fact the jury does not find a violation of the Family Leave Act and finds intentional infliction of emotional distress, I would more likely than not give the defense a judgment notwithstanding the verdict, because intentional infliction of emotional distress cannot stand as a reparable damage remedy or cause of action unless it's piggybacked on some violation of a statute, right? [¶] [Gibbs's Counsel]: Uh-huh. [¶] THE COURT: So if we don't find violation of the Family Leave Act and they find intentional infliction of emotional distress, I'll have to set aside the intentional infliction of emotional distress. [¶] All right. I'm open to any arguments you might have but that's what I'm thinking. It looks like it's right. [¶] [Gibbs's Counsel]: Yeah, it's pretty much the case."

Gibbs acknowledges that American Airlines repeatedly raised workers' compensation exclusivity as an affirmative defense. Gibbs dodged that defense at trial by "piggybacking" her emotional distress claim upon her CFRA claim, always conceding that her emotional distress claim would be preempted if the jury rejected her CFRA claim. We question Gibbs's right to alter her position, and depart from her theory of trial, by now insisting that her emotional distress claim survived the loss of her CFRA claim and faulting American Airlines for not producing evidence which Gibbs may have led it to believe was unnecessary.

---

injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence."

Nevertheless, we proceed to address Gibbs's claim that American Airlines lost its workers' compensation exclusivity defense by failing to affirmatively prove the "conditions of compensation" at trial. ▆ "[G]enerally speaking, a defendant in a civil action who claims to be one of that class of persons protected from an action at law by the provisions of the Workers' Compensation Act bears the burden of pleading and proving, as an affirmative defense to the action, the existence of the conditions of compensation set forth in the statute which are necessary to its application." (*Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91, 96-97 [151 Cal.Rptr. 347, 587 P.2d 1160].) ▆ Gibbs claims two deficiencies in American Airlines' trial evidence: a failure to prove that the emotional distress injury arose in the course of employment, and a failure to prove that American Airlines purchased workers' compensation insurance. Gibbs is wrong on both claims.

2. *The complaint and trial evidence established that any injury was work related.*

It is true that an injury caused by, and in the course of, employment is a condition of compensation. (Lab. Code, § 3600, subds. (a)(2), (a)(3).) However, Gibbs's own complaint makes it clear that any emotional distress injury arose in the course of employment and was caused by her employment. In fact, Gibbs concedes in her appellate brief that "it is plain from the facts alleged in [my] complaint that the injury is related to the course of employment." A complaint's factual allegations constitute judicial admissions binding on the plaintiff. (*Foxborough* v. *Van Atta* (1994) 26 Cal.App.4th 217, 222, fn. 3 [31 Cal.Rptr.2d 525].) American Airlines was not required to prove what Gibbs admitted in her complaint. Moreover, the trial evidence unequivocally proved that Gibbs's claimed injuries arose in the course of employment, and were caused by her employment.

3. *American Airlines was not required to prove to the jury that it purchased workers' compensation insurance.*

Gibbs's chief argument concerning workers' compensation is that American Airlines was required to prove to the jurors that it purchased workers' compensation insurance.[3] Proof of insurance coverage is not expressly listed as a "condition of compensation" prerequisite to application of workers' compensation provisions. Instead, the relevant condition of compensation is that, "at the time of the injury, both the employer and the employee are subject to the compensation provisions" of workers' compensation law. (Lab. Code, § 3600, subd. (a)(1).) Gibbs and American Airlines were manifestly "subject to the compensation provisions." The evidence indisputably

---

[3]Gibbs's argument is founded on American Airlines' failure to *prove* insurance coverage. Gibbs does not deny the near certainty that American Airlines is either insured or self-insured.

established that Gibbs was an employee, and every employer except the state is compelled by law to "secure the payment of compensation" by obtaining insurance or maintaining self-insurance. (Lab. Code, § 3700, subds. (a), (b).)

We also question the wisdom of requiring an employer to present proof of insurance to a jury. If the matter has reached a jury, the employer is facing potential liability and damages uncovered by workers' compensation. Yet, a jury could easily mistake evidence of workers' compensation insurance as proof that the employer will be indemnified for any assessed damages. ▮ Evidence of insurance has "an obvious potential to prejudice the jury's determination of the insured's liability." (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 311 [250 Cal.Rptr. 116, 758 P.2d 58].)

Significantly, an allegation of insurance coverage has never been required before application of the workers' compensation exclusivity provision on demurrer. "[W]hen a complaint affirmatively alleges facts indicating that the [Workers' Compensation] Act applies, no civil action will lie, and the complaint is subject to a general demurrer unless it states additional facts that negate application of the exclusive remedy rule." (*Arriaga* v. *County of Alameda* (1995) 9 Cal.4th 1055, 1060 [40 Cal.Rptr.2d 116, 892 P.2d 150].) A complaint alleging injuries within the course of employment, without any allegation of insurance coverage, is subject to demurrer. (See *id.* at pp. 1059-1060.)

▮ Gibbs's argument that an employer must prove to the jury that it has complied with the law and purchased workers' compensation insurance is founded entirely upon a footnote in *Doney* v. *Tambouratgis, supra,* 23 Cal.3d at page 98, footnote 8. In *Doney*, a woman sued a man for assault without any allegation of an employment relationship. (*Id.* at p. 94.) The defendant pled no affirmative defenses. (*Ibid.*) Trial evidence established that the plaintiff worked for the defendant as a waitress and erotic dancer, and that the defendant made violent sexual advances to her at the end of her work shift. (*Id.* at p. 95.) The defendant moved for nonsuit on grounds of workers' compensation exclusivity and renewed his preemption claim on appeal. (*Id.* at pp. 96, 99.) Our Supreme Court held that the defendant failed to plead and prove the affirmative defense of workers' compensation exclusivity. (*Id.* at p. 96.) The court acknowledged that pleading and proof are not required "where the complaint affirmatively alleges facts indicating coverage by the act." (*Id.* at p. 97.) The court cited *Singleton* v. *Bonnesen* (1955) 131 Cal.App.2d 327, 331 [280 P.2d 481], in support of this exception to pleading and proof requirements. (*Doney* v. *Tambouratgis, supra,* at p. 97.)

*Singleton* affirmed judgment following an employer's demurrer where the plaintiff alleged injury to an employee within the course of employment but

made no mention of workers' compensation insurance. (*Singleton* v. *Bonnesen, supra,* 131 Cal.App.2d at pp. 328-329.) ▮ Importantly, the Court of Appeal found it proper to presume that the employer complied with the law requiring its purchase of workers' compensation insurance. (*Id.* at p. 331.) A plaintiff's action against an employer upon allegations of a work-related injury is barred unless the plaintiff also alleges that the employer has failed to secure the payment of workers' compensation through mandated insurance. (*Ibid.*)

In *Doney*, an employer-employee relationship and work-related injury were never alleged in the pleadings. Under such circumstances, the defendant must plead and prove the "conditions of compensation" necessary to workers' compensation exclusivity. (*Doney* v. *Tambouratgis, supra,* 23 Cal.3d at pp. 97-98.) The Supreme Court's central focus was upon defendant's failure to plead and prove that the plaintiff's injury arose within the course of employment, but the court also stated that the defendant must prove that he is an insured employer. "The conditions of compensation liability . . . are set forth in section 3600 of the Labor Code. Although the conditions enumerated . . . do not specifically include a showing that the employer has secured the payment of compensation through compliance with section 3700 et seq. of the code, the introductory sentence of the section indicates that the concurrence of the enumerated conditions results in coverage under the act 'except as provided in section 3706. . . .' The latter section, of course, permits the injured employee to maintain a civil action against an uninsured employer 'as if this division did not apply.' Because an employer faced with a civil complaint seeking to enforce a common law remedy which does not state facts indicating coverage by the act bears the burden of pleading and proving 'that the [act] is a bar to the employee's ordinary remedy' (*Popejoy* v. *Hannon* [(1951)] 37 Cal.2d 159, 173 [231 P.2d 484]), we believe that the burden includes a showing by the employer-defendant, through appropriate pleading and proof, that he had 'secured the payment of compensation' (Lab. Code, § 3706) in accordance with the provisions of the act." (*Doney* v. *Tambouratgis, supra,* 23 Cal.3d at p. 98, fn. 8.)

In summary, the Supreme Court said that workers' compensation insurance coverage is presumed where the plaintiff alleges facts establishing an employment relationship and work-related injury, but must be pleaded and proved by the defendant where the complaint does not allege an employment relationship and work-related injury. The *Doney* court does not offer a rationale for the distinction, and the court's footnote directive on proof of insurance may be dictum. ▮ Whether dictum or not, proof of insurance was not required in this case because Gibbs alleged facts establishing an employment relationship with American Airlines and injuries arising from

the course of her employment at the airline. ■ A defendant need not plead and prove that it has purchased workers' compensation insurance where the plaintiff alleges facts that otherwise bring the case within the exclusive province of workers' compensation law, and no facts presented in the pleadings or at trial negate the workers' compensation law's application or the employer's insurance coverage. (*Doney* v. *Tambouratgis, supra,* 23 Cal.3d at pp. 97-98; *Singleton* v. *Bonnesen, supra,* 131 Cal.App.2d at p. 331.) ■ We reject Gibbs's suggestion that *Doney* creates a distinction based on the procedural posture of a case, so that insurance is presumed on demurrer but not at trial. Instead, insurance is presumed where the plaintiff's complaint against his or her employer alleges work-related injuries indicating coverage of the workers' compensation act. The trial court properly ruled that Gibbs's remedy for work-related emotional distress is workers' compensation.

C. *The trial court did not abuse its discretion in excluding coworkers' testimony.*

■ Gibbs's final appellate argument is that the trial court abused its discretion in excluding testimony from two of Gibbs's coworkers about instances when Supervisor Hickey was hostile to the coworkers' absences and need for medical leave. (Evid. Code, §§ 352, 787.) The trial court acted well within the bounds of reason in finding the proffered evidence to be largely "irrelevant," "collateral," necessitating an "undue consumption of time" and unduly prejudicial.

### III. DISPOSITION

The judgment is affirmed.

Stein, J., and Marchiano, J., concurred.

A petition for a rehearing was denied September 7, 1999, and appellant's petition for review by the Supreme Court was denied November 10, 1999.