Filed 9/3/14  Frank Bonomo v. Metropolitan State Hosp. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FRANK "ROCKY" BONOMO, | B250185 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC458238) |
| v. | |
| METROPOLITAN STATE HOSPITAL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Soussan G. Bruguera, Judge.  Affirmed.

Law Offices of Stephan Math, Stephan Math for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Assistant Attorney General, Michael E. Whitaker and Leah C. Gershon, Deputy Attorneys General, for Defendants and Respondents.

Plaintiff and appellant Frank "Rocky" Bonomo, an audio visual assistant for the California Department of State Hospitals (the "Department") claims that the Department violated his rights under the California Family Rights Act ("CFRA" or the "Act"), and that his supervisor, Bruce Baird, intentionally and negligently subjected him to extreme emotional distress. The trial court granted the Department's motion for summary judgment, and granted Baird's motion for judgment on the pleadings without leave to amend. In doing so it found that plaintiff did not state facts sufficient to constitute causes of action for either intentional or negligent infliction of emotional distress, and the Department had not as a matter of law violated plaintiff's rights under the CFRA. We affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL SUMMARY

Plaintiff was employed as an audio visual assistant for the Department at Metropolitan State Hospital ("hospital"). His duties included setting up equipment for daily employee training and doctors' lectures. He was the sole audio visual assistant at the hospital. He regularly worked nine hours per day four days per week, with weekends and Mondays off.

Plaintiff was supervised by Baird, whose title was Training Officer II, beginning in January 2009. From that time until September 2009, plaintiff felt that they had a great working relationship. They would correspond from their personal email accounts about work and non-work related matters.

In August 2009, plaintiff's wife began suffering from abdominal pain, and testing revealed that she had a large tumor and an elevated cancer marker. On September 1, 2009, plaintiff advised Baird about his wife's health condition, and stated that there might come a time when he would be unavailable to work as a result thereof. On September 10, 2009, a furlough day, plaintiff learned that his wife would need emergency surgery the following day. Plaintiff called Baird and notified him that he would not be at work the next day and for a couple of weeks thereafter, except for an event scheduled for September 16, 2009.

2

On September 11, 2009, plaintiff accompanied his wife as she underwent surgery. At 7:45 p.m. on that day, Baird called plaintiff and inquired as to how plaintiff and his wife were doing. During their conversation, Baird informed plaintiff that he needed a key from him in order to access certain equipment which he needed for a presentation the following morning. He offered to meet plaintiff at his home the following morning to obtain the key and to talk by telephone as to any questions he might have regarding the setting up of the equipment.

Instead of giving Baird the key, plaintiff went into the office early the following morning and set up the equipment for the presentation. It took one and a half to two hours to do the set up, and he was given four hours of work credit for doing so.

Between September 12 and September 21, 2009, Baird and plaintiff communicated several times by email and telephone. During these conversations, Baird inquired about plaintiff's wife's health, discussed plaintiff's compensation for work he performed on September 12, and updated plaintiff in regard to the presentation that Baird agreed to help present on September 16. On September 15, plaintiff prepared the equipment for the presentation scheduled for the next day. Plaintiff returned to work on a full time basis on September 29, 2009.

In October 2009, plaintiff did not take any time off to care for his wife. At the end of October, plaintiff submitted a written application to take intermittent family care leave, which was granted.

Plaintiff presented evidence of the following alleged interference with his right to take family care leave:

In October 2009, plaintiff was given some minor additional duties. Baird used the computer in plaintiff's office. Baird on one occasion asked plaintiff to help him move some chairs in conjunction with preparing for a presentation; when plaintiff declined to do so, stating that he could not do so because of a previous back injury, Baird suggested that Health & Safety be informed of his back problem so that it could be documented. Baird came to plaintiff's house on Halloween dressed in costume.

3

In November 2009, Baird continued to use the computer in plaintiff's office.[1]

In December 2009, Baird emailed plaintiff inquiring whether he planned to take December 15, 2009 off, and if so, whether he could come in for a few hours in the morning; plaintiff informed Baird that he was not planning on taking the day off.[2] Plaintiff submitted a written application to take intermittent family care leave for his wife in 2010; his request was granted. Baird spoke with plaintiff about changing his schedule to five days per week; it was never changed. Plaintiff said that Baird informed him that, based on his work schedule, he might ask that plaintiff's wife's scheduled doctor's appointments be changed to occur outside business hours; however, no rescheduling ever occurred.

In January 2010, Baird continued to use the computer in plaintiff's office a few times per week; Baird increased plaintiff's duties, such as "turning equipment on."

In February 2010, plaintiff took three days off to care for his wife. He then informed Baird that he was taking the rest of the week off. Baird told him they needed him for the rest of the week. Plaintiff did not report to work as requested. No action was taken against him. Baird asked plaintiff to see his wife's appointment schedule so that they could "work around it." Plaintiff requested a new supervisor in place of Baird. His supervisor was changed to Ms. Bates. Baird told plaintiff that his thoughts had gone to a dark place against religion and spirituality and he recited a passage from Psalms. Baird said he had been "documenting" to protect himself and was considering getting a lawyer. Baird gave plaintiff an article concerning budget cuts at the courts to show to his wife, a court employee.

In March, May, July, September and October 2010, plaintiff took no time off and reported no problems.

---

[1] During the month of November 2009, plaintiff requested and was granted one day off from work to care for his wife. At the end of November, plaintiff received a favorable performance review.

[2] Plaintiff requested and was granted permission to take December 1st off to care for his wife.

4

In April 2010, Baird asked plaintiff to float his regular weekday off on days that the training department was busy. Plaintiff did so on two occasions.

In June 2010, plaintiff "felt pressure" about floating his regular day off and felt he did not have a supervisor to turn to.

In August 2010, during a discussion about upcoming appointments with no set days, Baird asked plaintiff "what if they want it on a Monday?"

In November 2010, Baird told plaintiff that he had given Ms. Bates feedback regarding plaintiff's communications skills for plaintiff's annual performance evaluation.

In December 2010, Baird sent plaintiff an email regarding his lack of punctuality in arriving at work. In response, plaintiff contacted the hospital administration to complain about Baird's complaint. To resolve the issue of whether or not plaintiff was being punctual, plaintiff was instructed to sign in in the morning at the main administration building. For his convenience, plaintiff requested an alternative site to clock in. His request was denied by the hospital.

In January 2011, plaintiff went on workers' compensation disability for a shoulder injury. He never came back to work.

On March 25, 2011, plaintiff filed a complaint for damages, alleging a cause of action against the Department for violation of CFRA, and causes of action against Baird for intentional and negligent infliction of emotional distress. The Department brought a motion for summary judgment on September 16, 2011. Baird brought a motion for a judgment on the pleadings on December 16, 2011. After several continuances both motions were heard concurrently on March 6, 2013. Both motions were granted and judgment was entered in favor of the Department and Baird. A timely notice of appeal was filed on July 5, 2013.

CONTENTIONS

On appeal, plaintiff contends that the trial court erred in granting summary judgment to the Department, because the evidence he presented in opposition to the motion created a triable issue of fact concerning the Department's denial or

5

discouragement of his right to intermittent leave as provided in the CFRA.[3]  Plaintiff also maintains that the trial court erred in granting Baird judgment on the pleadings, as the allegations of the complaint state a cause of action against Baird for intentional infliction of emotional distress.  We consider each contention below.

DISCUSSION

1.  *CRFA's motion for summary judgment*

The appellate court reviews the trial court's granting of a summary judgment motion de novo and decides independently whether the facts not subject to dispute warrant judgment for the moving party as a matter of law.  (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1221.)  A defendant moving for summary judgment meets its burden of showing that the plaintiff cannot prove a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete affirmative defense to a cause of action.  Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action, or as to an affirmative defense to the cause of action.  (*Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216-1217.)

The CFRA is a portion of the Fair Employment and Housing Act ("FEHA") that provides protections to employees needing family care leave or medical leave.  (Gov. Code, § 12945.2, subd. (a); *Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1, 6; *Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606.)  The CFRA generally provides that it is unlawful for an employer to refuse an employee's request for up to 12 weeks of family care and/or medical leave in a 12-month period.  In addition, an

---

[3]     In this regard, plaintiff argues the trial court abused its discretion when it sustained certain of the Department's evidentiary objections to his declaration submitted in opposition to the motion for summary judgment.  However, the proffered evidence – that prior to his request for family care leave, his duties were performed by others during his scheduled days off and vacations, and "No mention of changes to my schedule had been made before I had requested CFRA leave" – had no bearing on the grant or denial of the motions for summary judgment and for judgment on the pleadings.  Consequently, we do not discuss the evidentiary objections.

6

employer may not discharge, fine, suspend, expel, discriminate or retaliate against an employee for exercising his or her rights under the CFRA. (Gov. Code, § 12945.2, subd. (*l*); Cal. Code Regs., tit, 2, § 11094; see also *Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 261.)

Alleged violations of the CFRA generally fall into two types of claims: (1) interference claims, in which an employee alleges an employer denied or interfered with his substantive rights to protected medical or family leave; and (2) retaliation claims, in which an employee alleges that he suffered an adverse employment action for exercising his rights to CFRA leave. (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 487-488.)

Because the CFRA and the federal Family and Medical Leave Act ("FMLA") contain nearly identical provisions regarding family care or medical leave, state appellate courts routinely rely on federal cases and regulations interpreting the FMLA when reviewing CFRA claims. (*Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 514; *Dudley v. Department of Transportation, supra,* 90 Cal.App.4th at p. 261; Cal. Code Regs., § 11097 [to the extent that FMLA regulations are not inconsistent with state law or the California Constitution, the federal regulations which govern FMLA leave are incorporated in the CFRA by reference].) Because there are limited cases interpreting interference claims under the CFRA, the courts often resort to federal case law interpreting interference claims under the FMLA for guidance.

The FMLA is a compromise between employee and employer interests. (*Ragsdale v. Wolverine World Wide, Inc.* (2002) 535 U.S. 81, 93-94.) The purposes of these laws are to "balance the demands of the workplace with the needs of families, and to "entitle employees to take reasonable leave for medical reasons" "in a manner that accommodates the legitimate interests of employers." (29 U.S.C. § 2601(b)(1-3); see also 29 C.F.R. § 825.101(b).) In this regard, the law includes the right to take continuous leave, intermittent leave, or reduced schedule leave, when medically necessary. Intermittent leave is leave taken in separate blocks of time due to a single qualifying reason. (29 C.F.R. § 825.202(a).)

7

In order to balance the rights of both employees and employers, the FMLA and accompanying regulations require the employee seeking intermittent or reduced schedule leave to consult with the employer when planning medical treatment and to make every effort to not unduly interrupt the employer's operations. (29 U.S.C. § 2612(e)(2)(A).) FMLA goals should be implemented "in a manner that accommodates the legitimate needs of employers." (29 U.S.C. § 2601(b)(3).) "If an employee needs leave intermittently or on a reduced leave schedule for planned medical treatment, then the employee must make a reasonable effort to schedule the treatment so as not to unduly disrupt the employer's operations." (29 C.F.R. § 825.203.) "[T]he cooperation of the employee and the employer in scheduling intermittent leave is vital in implementing the goals of the FMLA." (*Kaylor v. Fannin Regional Hosp., Inc*. (N.D.Ga. 1996) 946 F.Supp. 988, 998.) The FMLA further provides that if an employee's leave does disrupt an employer's operations, based on the approval of a health care provider, the employee should attempt to reschedule the leave for a time more convenient to the employer's operations. The FMLA does not give employees the unfettered right to take time off subject only to their own convenience without any consideration of its effect upon the employer. (*Id.* at p. 999.)

To establish that there has been a denial of family care leave under the CFRA, the employee must show by a preponderance of the evidence that the employer was a covered employer, the employee making the request was an eligible employee, the request was for a CFRA qualifying purpose, the request was reasonable, and the employer denied the request for CFRA leave. (Cal. Code Regs., tit. 2, § 11088(b)(1); *Dudley v. Department of Transportation, supra,* 90 Cal.App.4th at p. 261.) The Department does not dispute that it was a covered employer, that plaintiff was an eligible employee, or that plaintiff's request for family leave under the CFRA was for a qualifying purpose and was reasonable. The Department never denied any of plaintiff's requests for family care leave. Plaintiff claims, however, that the Department interfered with his right to family care leave by attempting to intimidate him into not exercising his rights. Although the CFRA prohibits "interference" with an employee's rights under the

8

CFRA (Gov. Code, § 12945.2, subd. (t)), the regulations promulgated under the Act do not provide any interpretation of what constitutes "interference" with family care leave. The FMLA regulations interpret "interference" to include refusing authorization of medical leave, discouraging the use of medical leave, and using the leave as a negative factor in employment actions. (29 C.F.R. § 825.220.) Plaintiff took intermittent leave in September, November, and December of 2009 and February of 2010. The Department never denied any of plaintiff's requests for medical leave time off, and plaintiff never submitted any evidence that his leave requests were used by the Department as a negative factor in employment actions against plaintiff. This leaves plaintiff with one possible factual issue, did the Department attempt to discourage him from exercising his right to intermittent leave under the CFRA?

Our review of the record does not reveal any evidence to support plaintiff's allegation that the Department attempted to intimidate plaintiff into not exercising his rights under the CFRA. It reveals that the Department reasonably attempted to cooperate with plaintiff in allowing him time off to assist his wife in regard to her medical appointments, and to otherwise take care of her when needed. It was, however, entitled to the cooperation of plaintiff so that whenever possible his absence did not adversely affect its operations. (See *Ragsdale v. Wolverine World Wide, Inc., supra,* 535 U.S. at pp. 93-94 [The purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and to "entitle employees to take reasonable leave for medical reasons" "in a manner that accommodates the legitimate interests of employers"].) As previously noted, the Department never turned down a request for medical leave, and merely asked plaintiff for reasonable accommodations in the scheduling of his wife's medical appointments, and plaintiff's cooperation in fulfilling his duties to the Department, e.g., coming in to the hospital in the morning, completing his set-ups before leaving for the medical appointment, and asking plaintiff to "float" his weekday day off, depending on the Department's needs.

A plaintiff has the burden of establishing that his rights under the CFRA have been violated. (*Kaylor v. Fannin Regional Hosp., Inc., supra,* 946 F.Supp. at p. 1000.) An

9

employee can prove an interference claim by direct or circumstantial evidence. (*Bachelder v. America West Airlines, Inc.* (9th Cir. 2001) 259 F.3d 1112, 1125.) In the present case, however, plaintiff failed to present evidence to support his interference claim by either direct or circumstantial evidence.

Plaintiff's main complaint is in regard to how the hospital reacted to his request for intermittent leave. However, the evidence presented in opposition to the Department's Motion for Summary Judgment did not raise a material issue of fact as to any basis for a cause of action for interference with plaintiff's rights under the FMLA and the CFRA. No evidence was presented to show that the Department ever denied plaintiff medical leave under the CFRA or used the leave he took as a negative factor in an employment action against him. Nor was any evidence presented that the Department discouraged the use of medical leave by plaintiff. The conduct complained of by plaintiff were basically of two types: (a) reasonable requests by the employer for accommodation, or (b) issues dealing with plaintiff's performance, all of which were both minor and unrelated to his taking time off for family leave, and none of which individually or collectively affected his performance review. We therefore affirm grant of summary judgment to the Department.

## 2. *Baird's motion for judgment on the pleadings*

"A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii). ) A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515; *Mack v. State Bar* (2001) 92 Cal.App.4th 957, 961.) All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law; judicially noticeable matters may be considered. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Mack,* at p. 961.)" (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.)

The judgment on the pleadings granted by the trial court was directed to the two causes of action brought solely against Baird, for intentional and negligent infliction of emotional distress. On appeal, plaintiff fails to raise any factual or legal issue related to his negligence claim. We thus consider only the cause of action for intentional infliction of emotional distress. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed waived]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 ["'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]'"])

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were proximately caused by the defendant's outrageous conduct. (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1028.)

In evaluating whether a defendant's conduct was outrageous, it is "'not . . . enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' (Rest.2d Torts, § 46, com. d, p. 73.)" (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496.)

In the present case, even accepting all of the allegations of the complaint as true, and liberally interpreting same, plaintiff's allegations totally fail to meet the requirements for stating a cause of action for intentional infliction of emotional distress. The conduct of Baird alleged in the complaint upon which plaintiff relies is simply not extreme or outrageous. Indeed, the majority of plaintiff's allegations relate to personnel

11

management activities by Baird, which pursuant to governing authority, are insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80 ["Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society"].)

The claims dealing with Baird's managerial actions include: Calling plaintiff, while his wife was undergoing surgery, regarding a closet key and asking about his availability the following day to consult with Baird; subjecting plaintiff to emails and phone calls regarding work issues and asking him if he could come into work for an hour or two while he was on intermittent leave; informing plaintiff that he was going to contact Health and Safety regarding his physical fitness to perform his job; adding to plaintiff's work duties; using plaintiff's computer when he was on leave; asking plaintiff for his wife's appointment schedule and suggesting that her medical appointments may need to be changed due to plaintiff's need to be at work; insisting that plaintiff change his four day work schedule to a five day work schedule, which led to plaintiff working on his regular weekday day off when the Department was very busy; emailing plaintiff three times at his home, and entering his office while he was not in it; saying to plaintiff, "Say, Rocky, Mary is getting better isn't she? You are not planning on taking any CFRA time are you?;" and telling plaintiff that in preparation of his yearly performance review he had given Ms. Bates instructions on how to improve his communication skills. In addition, plaintiff alleges that Baird engaged in the following conduct: Visited plaintiff's home on Halloween night dressed in a costume and he rang the front door bell; gave plaintiff newspaper articles about impending court layoffs and asked him to bring it to the attention of his wife, a court employee; told plaintiff on one occasion that "his thought had gone to the dark side in a way that is against religion and spirituality," and reading him a passage from the Bible.

These allegations, whether taken separately or together, fail to meet the requirements for alleging a cause of action for intentional infliction of emotional distress. The alleged acts are not extreme or outrageous. They certainly do not go beyond all

possible bounds of decency, or can be regarded as atrocious and utterly intolerable in a civilized society. (See *Cochran v. Cochran*, *supra*, 65 Cal.App.4th at p. 496.) Consequently, the trial court's grant of Baird's motion for judgment on the pleadings was proper.[4]


DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


We concur:


TURNER, P.J.


MOSK, J.

---

[4] Because we conclude that plaintiff's complaint fails to state a cause of action for intentional infliction of emotional distress, we need not consider Baird's contention that the claim is preempted by the exclusivity provisions of the Workers Compensation Law, Labor Code section 3600 et seq.

[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.